UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hammerlund Construction, Inc.,

        Plaintiff,                              **MEMORANDUM OPINION
                                                          AND ORDER**
      v.                                              Civil No. 11-1041 ADM/LIB

International Union of Operating
Engineers, Local 49,

        Defendant.

_____

Jesse R. Orman, Esq., Aaron A. Dean, Esq., and Rachel J. Elvester, Esq., Fabyanske Westra Hart & Thomson, PA, Minneapolis, MN, on behalf of Plaintiff.

Brendan D. Cummins, Esq., and Timothy J. Louris, Esq., Miller O'Brien Cummins, PLLP, on behalf of Defendant.

_____

## I. INTRODUCTION

On December 22, 2011, the undersigned United States District Judge heard oral argument on Defendant International Union of Operation Engineers, Local 49's ("Local 49") Motion for Judgment on the Pleadings [Docket No. 11] and Plaintiff Hammerlund Construction, Inc.'s ("Hammerlund") Motion for Summary Judgment [Docket No. 14]. For the reasons stated below, Defendant's motion is granted and Plaintiff's motion denied.

## II. BACKGROUND[1]

In September 2009, Local 49 and Hammerlund signed a Project Labor Agreement ("PLA"), Complaint [Docket No. 1] Ex. A, to govern work on the Essar Steel plant in

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). Similarly, in considering a motion for judgment on the pleadings, the Court takes the facts alleged in the complaint as true and construes the complaint in the light most favorable to the plaintiff. See Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006).

Nashwauk, Minnesota. Compl. ¶ 8.  During the relevant time period, Hammerlund and Local 49 were also signatories to a collective bargaining agreement ("CBA"), Cummins Aff. [Docket No. 21] Ex. 3, the 2008-2011 Highway, Railroad, and Heavy Construction Agreement.  Cummins Aff. Ex. 2.  The PLA did not supersede the CBA except "in the event of a conflict,"  PLA § 3-8, and it expressly incorporated the CBA.  PLA § 13-1 ("Any EMPLOYER performing work on the PROJECT which is not party to a Local Area Labor Agreement . . . agrees to install hourly wage rates, hours . . . as fully set forth in the Local Area Agreements.").

Hammerlund rented heavy construction equipment from San Jan, Inc. and NorTrax to perform the work at Essar Steel, including infrastructure work and site work such as excavation and rock blasting.  Compl. ¶¶ 9–11.  Hammerlund had two staging locations near the Essar Steel site which were not owned by Essar Steel.  Compl. Ex. B ("Award") 13.  At both locations, Hammerlund stored and maintained its equipment.  Id.  During its work at Essar Steel, Hammerlund repaired equipment at these two staging locations, hiring and paying employees through San Jan, Inc., and not according to the terms and conditions of the CBA.  Id. 14–15.

Local 49 learned of this activity in July of 2010 but waited until September 17, 2010 to file a grievance, alleging that Hammerlund had violated a PLA provision by using non-union mechanics for equipment maintenance.  Id. 20–21; Compl. ¶ 12.  After Local 49 and Hammerlund were unable to resolve the matter through the grievance process, the matter was submitted for arbitration under the PLA's arbitration provision.  Id. ¶¶ 16–17.  The arbitration hearing occurred on January 7, 2011, and the arbitrator issued his decision on February 7, 2011.  Id. ¶¶ 18–19.  The arbitrator's decision sustained Local 49's grievance and determined that Hammerlund did not comply with the PLA on its off-site maintenance work.  Compl. ¶ 19; see

also Award. Hammerlund filed a petition to vacate the Award on April 22, 2011, alleging that the Award did not draw its essence from the PLA and that the arbitrator exceeded the scope of his authority and the arbitrable issues.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The same standard applies to judgment on the pleadings. See Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party, however, may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Arbitration awards are afforded a very deferential standard of review, because "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising . . . [out] of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). "When a dispute is properly submitted to arbitration pursuant to an agreement to arbitrate in a collective bargaining agreement, the resulting arbitration award is ordinarily entitled to extreme judicial reference." Local Union 257, IBEW v. Sebastian Elec., 121 F.3d 1180, 1184 (8th Cir. 1997). Even "allegations that the [arbitrator's award] . . . misinterprets the parties' agreement" do not authorize courts to review that decision. Duluth Missabe & Iron

Range Ry. Co. v. Int'l Bhd. of Locomotive Eng'rs, AFL-CIO 000-101, 264 F.3d 782, 784 (8th Cir. 2001); see also IBEW, Local 545 v. Hope Elec. Corp., 380 F.3d 1084, 1100–01 (8th Cir. 2004) ("in determining whether the arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's award.").

The limited circumstance where courts will vacate arbitration awards is when the award does not derive its essence from the collective bargaining agreement or when the arbitrator ignores the contract's plain language. See e.g., Keebler Co. v. Milk Drivers & Dairy Emp. Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996). Put another way, courts will uphold an arbitrator's award as long as it draws its essence from the agreement and is not "his own brand of industrial justice." United Paperworks Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). Even if the court is "convinced [the arbitrator] committed serious error [it] does not suffice to overturn his decision" if "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Misco, 484 U.S. at 38. An arbitration award draws its essence from the agreement so long as "it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers, Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2002) (citation omitted).

**B.     Analysis**

Hammerlund argues that the arbitration award fails to derive its essence from the parties' agreement because Local 49's grievance was time-barred, the arbitrator based his decision on the CBA rather than solely the PLA, and the arbitrator misconstrued specific provisions of the PLA.

### 1. Arbitrator's Decision Derived Its Essence from the PLA

#### a. Arbitrator's Decision Regarding Hammerlund's Waiver and the Timeliness of the Grievance is Procedural and Therefore Not Reviewable

The PLA governs the dispute resolution process, stipulating that all disputes arising out of contractual interpretation "shall be resolved by the final and binding arbitration procedures set out in this Article." PLA § 16-1(a). The PLA also specifies that a grievance must be submitted "by written notice . . . within five (5) calendar days of first knowledge of the facts giving rise to the grievance." Id. Grievances under the PLA which are not filed within the proper time period "without a written agreement extending the time shall be deemed a waiver of such a grievance to the other with prejudice to the subject grievance." Id. § 16-2.

The record shows that Local 49 was aware of the issues underlying the grievance by mid-July 2010. Award 20. Local 49 failed to file a grievance, however, until September 17, 2010, and it never requested a time extension from Hammerlund. Id. 20–21. The arbitrator determined that, although Local 49 had not filed its grievance within 5 days, the violation was ongoing and thus not time-barred. Id. 23–24. Moreover, the arbitrator determined that even if Local 49's grievance was late, Hammerlund had waived its right to challenge the grievance as time-barred by failing to timely raise the issue in arbitration. Id. 16 ("The parties stipulated at the onset of the hearing that there were no procedural issues preventing the arbitration of this matter.").

Procedural issues "which grow out of the dispute and bear on its final disposition should be left to the arbitrator" because they are often intertwined with the merits of the dispute and because allowing procedural challenges to arbitrator decisions would cause serious delay and duplicative efforts. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 556–58 (1964). The

issue of whether a grievance is time-barred is a procedural issue to be resolved by the arbitrator. See Auto., Petroleum & Allied Ind. Emp. Union, Local 618 v. Town & Country Ford, Inc., 709 F.2d 509 (8th Cir. 1983) (determining that the failure to file a grievance within the contractual five-day deadline was a procedural question for the arbitrator to decide).  The applicability of time limit rules is a "matter presumptively for the arbitrator, not for the judge."  Howsam v. Dean Witter Reynolds, Inc. 537 U.S. 79, 85 (2002).

The arbitrator's decision regarding the timeliness of Local 49's grievance and Hammerlund's waiver of that issue is a procedural determination not reviewable by this Court. Here, the arbitrator's procedural decision – determining that Local 49's grievance was procedurally barred and should be decided on the merits – derives its essence from the parties' agreement and therefore is affirmed.

### b.   Arbitrator's Decision is Based on the PLA

As stated earlier, the PLA specifically incorporates by reference the CBA.  See PLA §§ 13-1, 3-8.  The arbitrator determined that "The PLA expressly incorporates terms of the local area labor agreements into the PLA."  Award 27.  The PLA specified the project as being work done at the site in Nashwauk, Minnesota, PLA § 3-1, and it stated that it applied and was limited to the work performed by Hammerlund and any subcontracts for the project at the project site only, id. § 3-8.

The arbitrator further determined, however, that an apparent ambiguity existed between Section 3-2 and Article 29 of the PLA.  Section 3-2 specifies that the PLA covers all "contracts or subcontracts for the performance of construction work at the actual site of construction or

fabrication that occurs within a 50 mile radius of the PROJECT site." Article 29, however, defines territory as "the PROJECT site and any work done on the PROJECT within a fifty (50) mile radius of the PROJECT." The ambiguity between Article 29 and PLA § 3-2 is whether all off-site work within 50 miles falls under the ambit of the agreement, or whether only fabrication within the 50-mile radius is covered. The arbitrator examined the bargaining history of the PLA to determine the meaning of these apparently ambiguous terms, and he determined that Article 29 was the controlling definition, that all work done at the Essar Steel project site and within 50 miles was covered by the PLA. Award 31. Alternatively, the arbitrator found that even if Section 3-2 was controlling, the repair work Hammerlund performed was "[i]n essence . . . creating a new bucket . . . [and] creating a new tailgate," work that "is clearly fabrication" and therefore subject to the PLA terms. Id. 32. Based on his interpretations of the PLA and its bargaining history, the arbitrator determined that "[i]n order to remedy the violation of the PLA by the Employer in this case. . . the Employer [must] begin applying the terms of the PLA to all maintenance work . . . within 50 miles of the ESSAR Steel project site." Id. 34.

Given the deferential standard of review of arbitrator decisions, an "arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." Boise Cascade Corp., 309 F.3d at 1080 (internal quotation omitted). Arbitrators are allowed to resolve ambiguities by looking to the parties' intent and the contract as a whole. See Fl. State Bd. of Admin. v. Law Eng'ring & Envtl. Servs., Inc., 262 F.Supp. 2d 1004, 1008 (D. Minn. 2003) ("To ascertain the parties' intentions, the court must interpret the contract as a whole and attempt to harmonize all the contract's terms."). Here, Hammerlund's argument is that the

7

arbitrator misinterpreted the PLA, not that he failed to apply it. As such, the arbitrator's decision derives its essence from the PLA and warrants affirmance on this argument as well.

### c.  Arbitrator's Decision Reasonably Applied the PLA to the Mechanics' Repair Work

The express terms of the PLA do not govern equipment suppliers, but the PLA does include a provision regulating subcontractors. See PLA art. 24 ("The EMPLOYER agrees that neither it, nor any of its subcontractors will subcontract any work to be done on the PROJECT . . . unless the subcontractor is performing work beyond the designated TERRITORY of this AGREEMENT."). Hammerlund now argues that the arbitrator wrongly applied the PLA to equipment supplier NorTrax, and as a result his decision was not based on the PLA and should be overturned. Hammerlund asserted this argument to the arbitrator, and the arbitrator found that even if the mechanics were not subcontractors, the PLA still required that Hammerlund pay the required wages and benefits because the repair work was expressly covered by the PLA. Award 33–34. As the arbitrator based his decision on the PLA and as this fact issue has already been determined by the arbitrator, this Court will not now reconsider this issue. The arbitrator's decision derives its essence from the PLA, and his decision is affirmed on this ground as well.

### 2.  Arbitrator's Decision Did Not Exceed the Scope of his Authority

Hammerlund also avers that the Award must be vacated because the arbitrator exceeded the scope of his authority. Specifically, Hammerlund contends that the arbitrator based his award on the CBA not the PLA, Compl. ¶ 23(a), that he "ignored the language of the PLA and rewrote the terms of the PLA," id. ¶ 23(b), and that the he "manifestly disregarded the law,

particularly well-settled law regarding interpretation of contracts," id. ¶ 23(c).  All of these arguments fail.

Courts reviewing whether an arbitrator has exceeded his authority are extremely deferential, broadly construing the agreement "with all doubts resolved in favor of the arbitrator's award."  Hope Elec. Corp., 380 F.3d at 1100–01.  As discussed above, the arbitrator properly based his Award on the PLA and the CBA as incorporated by reference.  Additionally, he interpreted the language of the PLA, resolving internal ambiguities and basing his decision on an interpretation of the PLA's terms.  Furthermore, the arbitrator did not show manifest disregard for well-settled law; rather, ambiguous terms were resolved by looking to party intent.  For all these reasons, Hammerlund has failed to show that the arbitrator exceeded his authority, and therefore his decision is affirmed.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Judgment on the Pleadings [Docket No. 11] is **GRANTED**;

2. Plaintiff's Motion for Summary Judgment [Docket No. 14] is **DENIED**; and

3. Plaintiff's Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


  s/Ann D. Montgomery  
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 11, 2012.